## 60734. AMERICAN ERECTORS, INC. et al. v. HANIE et al.
## 60735. LITTLE v. HANIE et al.

SHULMAN, Presiding Judge.

The appellants in these interlocutory appeals are the defendants in a wrongful death action. The action arose from a

collision between an automobile owned by appellant Little and driven by his wife and a crane owned by appellant American Erectors, Inc. (hereinafter "American") and driven by appellant Cheatham. Mrs. Little and her mother, a passenger in appellant's car, were killed in the collision. Mrs. Little's siblings brought suit against American and, under the family purpose doctrine, against Little for the wrongful death of their mother. Case No. 60734 involves the trial court's denial of American's and Cheatham's motions to open default and Cheatham's motion to dismiss for insufficiency of service. In Case No. 60735, Little appeals from the denial of his motion for summary judgment. We find it necessary to reverse the orders in Case No. 60734 and affirm the order in Case No. 60735.

1. More than a year after suit was filed, but before a default judgment was entered, American and Cheatham filed a motion under Code Ann. § 81A-155 (b) to open the default. As grounds for opening the default American and Cheatham set forth the following facts by affidavits executed by the president of American and by the insurance agent with whom American dealt. Some months prior to the collision here, American's insurance carrier gave notice that it would not renew the existing policy, which was due to expire shortly. American contacted its insurance agent, Crawford, who began to seek a replacement policy. Crawford was referred to and contacted Ross Harper of Atlanta Insurance Center. Harper delivered what purported to be an insurance binder from "Aetna Casualty and Surety Company." In response to subsequent inquiries concerning the issuance of a policy, Harper assured Crawford that a policy would be issued and quoted an annual premium. Before the policy arrived, the collision here involved occurred. Harper claimed that he attempted to contact Aetna's claims division. He then investigated the claim himself. Harper subsequently informed American that Aetna was going to cancel the policy, but that coverage had been in force at the time of the collision and that that loss would be covered by Aetna. Some two years later, when this suit was served on American, the papers were transmitted to Crawford, who sought to give them to Harper. The telephone for Atlanta Insurance Center had been disconnected, but Crawford located Harper, who was working for a car dealer. Harper assured Crawford that he would send the suit papers to Aetna. When interrogatories were served on American, Crawford once again sought to contact Harper. This time he was unable to do so, being informed that Harper had been in some trouble. When Crawford contacted Aetna, he discovered that there had never been a binder issued by that company to American, that American had been without insurance and that no one was defending

the suit against American and Cheatham. Both defendants then hired counsel and sought to open the default, submitting affidavits detailing the events narrated above. Although the averments of American and Crawford were uncontradicted, and there was no question of meeting the technical requirements of Code Ann. § 81A-155 (b), the trial court declined to open the default.

We believe that this case is so similar in principle to *Cobb County Fair Assn. v. Boyle,* 143 Ga. App. 754 (240 SE2d 136), that the same result must be reached. There, as here, there was good cause for the defendant to believe that the suit was being defended by an insurance company. Under the facts here, any neglect by Cheatham and American in following the progress of the case was excusable. "The law should not blindly impose standards which require individuals, in the conduct of their daily business, to distrust the parties with whom they deal. Likewise, a litigant should not unnecessarily be forced into default as a consequence of having reasonably relied upon the word of his fellow, *particularly* when no innocent party will suffer if the default is opened. The purpose of § 81A-155 (b) being placed in the Code is to furnish relief when, as here, there was an understandable misunderstanding." Id., p. 756.

Since the evidence demanded a finding of excusable neglect, the trial court abused its discretion in not opening the default.

2. Cheatham filed a motion to dismiss for insufficiency of service. The return of service showed that service was made on Cheatham by leaving a copy of the complaint at the office of American, in Fulton County, with Cheatham's father. In support of his motion, Cheatham filed an affidavit in which he swore that he was and always has been a resident of Cobb County. That affidavit was uncontroverted and appellees made no showing that service was accomplished other than in the manner shown on the return.

In support of the trial court's denial of the motion to dismiss, appellees attempt to show that there was a conflict in the evidence concerning the method of service. They point out that the affidavits by the president of American and by Crawford contain statements to the effect that American and Cheatham were served with this suit. Those statements amount to unsupported legal conclusions. In addition, Crawford's statement was, so far as the truth of the statement is concerned, hearsay, wholly lacking in probative value.

The evidence establishes without contradiction that service was attempted by leaving a copy of the summons with a relative of the defendant Cheatham at Cheatham's place of business. That service is insufficient. *Collins v. Peacock,* 147 Ga. App. 424 (2) (249 SE2d 142).

The trial court erred in denying defendant Cheatham's motion to dismiss.

3. Appellant Little contends that he could not be held liable for his mother-in-law's death because the person whose negligence is alleged to have caused the death is a necessary plaintiff. That argument is based on *Thompson v. Watson,* 186 Ga. 396 (197 SE 774). Unfortunately for Mr. Little, the Supreme Court declined to follow that case in *Walden v. Coleman,* 217 Ga. 599 (124 SE2d 265). In *Walden,* as in the present case, the defendant was the spouse of the child of the deceased. After an analysis of the applicable law, the Supreme Court held that the suit was not barred.

Appellant's argument is made even weaker by the wording of the wrongful death statute under which this action was brought. That statute, Code Ann. § 105-1306, provides for a right of action for the "husband and/or child or children" of the deceased, and further provides that "those surviving at the time the action is brought shall sue jointly and not separately . . ." Since Mrs. Little died in the accident, it cannot be said that she is of the class who would be plaintiffs. Even if she had lived, our reading of the statute is that she would not have been a *necessary* plaintiff. That same Code section expressly provides for prosecution of the suit by fewer than all of the children. It requires only that they be served so that they "may intervene in said case as an additional plaintiff at any time before final judgment." The logical conclusion is that the suit *could* continue without a particular child's participation.

Since Mrs. Little, due to her death, was not a member of the class who could bring this action and since, even had she survived, she would not have been a necessary plaintiff, Mr. Little's relationship to the deceased and to the plaintiffs does not bar his liability. The trial court correctly denied his motion for summary judgment.

*Judgment reversed in Case No. 60734. Judgment affirmed in Case No. 60735. Quillian, C. J., concurs. Carley, J., concurs specially.*

DECIDED FEBRUARY 27, 1981 —

*Duard R. McDonald,* for appellants (case no. 60734).

*Robert W. Hassett,* amicus curiae.

*Charles H. Hyatt, Joseph E. Cheeley, Lawrence J. Hogan, William E. Turnipseed,* for appellees.

*William E. Turnipseed, Henry Angel,* for appellant (case no. 60735).

*Charles H. Hyatt, Joseph E. Cheeley,* for appellees.

CARLEY, Judge, concurring specially.

I concur wholeheartedly in Divisions 2 and 3 of the majority opinion. I also concur in Division 1 which finds an abuse of discretion by the trial court because of its refusal to open default under the circumstances of this case. Although appellate courts are, and should be, very reticent to substitute their judgment for that of the on-the-scene trial judge, I am constrained to agree that under the uncontradicted evidence showing "excusable neglect" and in view of the actual time sequence as shown by the record, the trial court erred in failing to open default. However, I feel it necessary to address an argument raised by appellees in their brief which, on its face, appears to require affirming the trial court's refusal to open default. Appellees state: "Furthermore, Appellant American Erectors, Inc., cannot claim to be diligent when in January, *1978* it received a copy of a co-defendant's request for admissions (see Brief of Appellants, Part I, page 4). Not until approximately *one year* later, . . . did appellants seek to employ counsel and file defensive pleadings." Were this contention borne out by the record, I think that the trial court would have had ample evidence before it to support its refusal to open default and there would be no basis for an appellate determination that the trial court had abused its discretion. It is true that appellants' briefs — here and in the trial court — refer to a co-defendant's discovery document served in January of 1978. However, the record clearly reveals that the request for admissions referred to was filed and served in *December* of 1978 shortly after the filing of appellees' interrogatories directed to appellants which gave to appellants their first indication that the insurance company may not be defending the action on behalf of appellants. Appellants' motions to open default were filed on January 17, 1979. Accordingly, considering all of the circumstances of the case, and especially in view of the absence of any dispute over appellants' affidavit recitation of the facts relied upon as showing excusable neglect, I believe that we have no alternative but to reverse the trial court's order denying appellants' motions to open default.